**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

XCLUSIVE-LEE, INC.,

Plaintiff,

v.

JELENA NOURA "GIGI" HADID,

Defendant.

No. 19 Civ. 520

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

John C. Quinn
Matthew J. Craig
Talia I. Nissimyan
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
(212) 763-0883

*Attorneys for Defendant*

May 1, 2019

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 2

ARGUMENT .......... 3

I. THE COMPLAINT DOES NOT ALLEGE BASIC ELEMENTS OF A COPYRIGHT INFRINGEMENT CLAIM .......... 4

II. THE COMPLAINT SHOWS THAT MS. HADID'S USE OF THE PHOTOGRAPH WAS PERMISSIBLE .......... 7

A. Fair Use .......... 7

B. Implied License .......... 12

III. THE COMPLAINT FAILS TO ALLEGE ANY OF THE ELEMENTS OF CONTRIBUTORY INFRINGMENT .......... 14

CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*ABKCO Music, Inc.* v. *Harrisongs Music, Ltd.*,
944 F.2d 971 (2d Cir. 1991) ........ 5, 6

*Am. Geophysical Union* v. *Texaco Inc.*,
60 F.3d 913 (2d Cir. 1994) ........ 8, 9

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009) ........ 3, 5, 6

*Authors Guild* v. *Google, Inc.*,
804 F.3d 202 (2d Cir. 2015) ........ 7, 11

*Authors Guild, Inc.* v. *HathiTrust*,
755 F.3d 87 (2d Cir. 2014) ........ 7, 9, 10

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007) ........ 3

*Bill Graham Archives* v. *Dorling Kindersley Ltd.*,
448 F.3d 605 (2d Cir. 2006) ........ 10

*Blanch* v. *Koons*,
467 F.3d 244 (2d Cir. 2006) ........ *passim*

*Campbell* v. *Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) ........ 8, 9

*Capitol Records, Inc.* v. *Wings Dig. Corp.*,
218 F. Supp. 2d 280 (E.D.N.Y. 2002) ........ 5

*Corbis Corp.* v. *UGO Networks, Inc.*,
322 F. Supp. 2d 520 (S.D.N.Y. 2004) ........ 4

*Design Options, Inc.* v. *BellePointe, Inc.*,
940 F. Supp. 86 (S.D.N.Y. 1996) ........ 13

*Faulkner* v. *Nat'l Geographic Enters. Inc.*,
409 F.3d 26 (2d Cir. 2005) ........ 14

*Fourth Estate Pub. Benefit Corp.* v. *Wall-Street.com, LLC*,
139 S. Ct. 881 (2019) ........ 4, 5

*Fox News Network* v. *Tveyes, Inc.*,
883 F.3d 169 (2d Cir. 2018) .......... 7, 11, 12

*Getty Images (US) Inc.* v. *Advernet, Inc.*,
797 F. Supp. 2d 399 (S.D.N.Y. 2011) .......... 5, 6

*Gillespie* v. *AST Sportswear, Inc.*,
No. 97 Civ. 1911, 2001 WL 180147 (S.D.N.Y. Feb. 22, 2001) .......... 10, 13

*Graham* v. *James*,
144 F.3d 229 (2d Cir. 1998) .......... 13

*Gym Door Repairs, Inc.* v. *Young Equip. Sales, Inc.*,
206 F. Supp. 3d 869 (S.D.N.Y. 2016) .......... 15

*Hallstrom* v. *Tillamook Cty.*,
493 U.S. 20 (1989) .......... 5

*Harper & Row Publishers, Inc.* v. *Nation Enters.*,
471 U.S. 539 (1985) .......... 7

*Hutson* v. *Notorious B.I.G., LLC*,
No. 14 Civ. 2307, 2015 WL 9450623 (S.D.N.Y. Dec. 22, 2015) .......... 6, 7

*Infinity Broad. Corp.* v. *Kirkwood*,
150 F.3d 104 (2d Cir. 1998) .......... 10

*Joe Hand Promotions, Inc.* v. *Maupin*,
No. 15 Civ. 6355, 2018 WL 2417840 (E.D.N.Y. May 25, 2018) .......... 13

*Katz* v. *Google Inc.*,
802 F.3d 1178 (11th Cir. 2015) .......... 9

*McNeil* v. *United States*,
508 U.S. 106 (1993) .......... 5

*Morris* v. *City of New York*,
No. 12 Civ. 3959, 2013 WL 5781672 (E.D.N.Y. Oct. 28, 2013) .......... 3

*On Davis* v. *The Gap, Inc.*,
246 F.3d 152 (2d Cir. 2001) .......... 8

*Otto* v. *Hearst Commc'ns, Inc.*,
345 F. Supp. 3d 412 (S.D.N.Y. 2018) .......... 9

*Oyewole* v. *Ora*,
291 F. Supp. 3d 422 (S.D.N.Y. 2018) .......... 7, 9, 10, 12

*Papa's-June Music, Inc.* v. *McLean*,
921 F. Supp. 1154 (S.D.N.Y. 1996) ........ 6, 7

*Psihoyos* v. *Pearson Educ., Inc.*,
855 F. Supp. 2d 103 (S.D.N.Y. 2012) ........ 13

*Reed Elsevier, Inc.* v. *Muchnick*,
559 U.S. 154 (2010) ........ 4

*Reis, Inc.* v. *Lennar Corp.*,
No. 15 Civ. 7905, 2016 WL 3702736 (S.D.N.Y. July 5, 2016) ........ 14

*Rogers* v. *Koons,*
960 F.2d 301 (2d Cir. 1992) ........ 10, 13

*Sony Corp. of America* v. *Universal City Studios, Inc.,*
464 U.S. 417 (1984) ........ 8

*Stanacard, LLC* v. *Rubard, LLC*,
No. 12 Civ. 5176, 2016 WL 462508 (S.D.N.Y. Feb. 3, 2016) ........ 15

*Stern* v. *Lavender*,
319 F. Supp. 3d 650 (S.D.N.Y. 2018) ........ 8

*Swatch Grp. Mgmt. Servs. Ltd.* v. *Bloomberg L.P.*,
756 F.3d 73 (2d Cir. 2014) ........ 7

*United States ex rel. Wood* v. *Allergan, Inc.*,
899 F.3d 163 (2d Cir. 2018) ........ 5

*Wolo Mfg. Corp.* v. *ABC Corp.*,
349 F. Supp. 3d 176 (E.D.N.Y. 2018) ........ 3, 14

**STATUTES**

17 U.S.C. § 107 ........ *passim*

17 U.S.C. § 201 ........ 5

17 U.S.C. § 410 ........ 4

17 U.S.C. § 411 ........ 3, 4, 5

17 U.S.C. § 501 ........ 5

17 U.S.C. § 504 ........ 3

Defendant Jelena Noura "Gigi" Hadid, by her attorneys Kaplan Hecker & Fink LLP, respectfully submits this memorandum of law in support of her motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

Ms. Hadid is a famous American supermodel. It is an unfortunate reality of Ms. Hadid's day-to-day life that paparazzi make a living by exploiting her image and selling it for profit. This lawsuit takes that practice to a new level: the Complaint seeks substantial monetary damages from Ms. Hadid based on allegations that she found a copy of a photograph *of herself* online and reposted it to her personal Instagram account, where it remained for a matter of days.

The plaintiff in this case, Xclusive-Lee, Inc. ("Xclusive"), did not take the photograph at issue and identifies no harm it suffered on account of the allegedly infringing conduct. Xclusive nevertheless brings claims against Ms. Hadid for direct and contributory copyright infringement. Its Complaint is fatally flawed in multiple respects. Xclusive does not allege that a valid copyright has been registered for the photograph. Nor does it allege the requisite written assignment or licensing agreement that expressly gives Xclusive the right to bring the accrued claims of the unidentified photographer. And the Complaint establishes that Ms. Hadid's reposting of the photograph was fair use and consistent with an implied license.

In light of these fundamental defects, this lawsuit appears to be nothing more than an effort to extract money from Ms. Hadid, presumably based on a calculation that, even in a meritless case like this one, the anticipated costs of litigation would cause Ms. Hadid to pay out a modest settlement. This sort of misuse of the Copyright Act should not be countenanced. For the reasons set forth below, the Complaint should be dismissed.

## BACKGROUND

Being followed and photographed is not an uncommon experience for the 24-year-old Ms. Hadid, and in that respect October 11, 2018, was a day no different than most. As Ms. Hadid exited a non-descript building in New York City, she encountered a photographer waiting for her outside. Compl. ¶ 8 & Ex. 1. Although these encounters are often disruptive or even unsettling, in this particular instance Ms. Hadid decided to indulge the photographer. She stopped and posed for the camera—and in that moment the photographer snapped a photograph. *Id.*, Ex. 1.

The next day, Ms. Hadid allegedly found a copy of the resulting photograph published online and reposted a cropped version of it to her personal Instagram page. *Id.* ¶¶ 9-11; *compare* Ex. 1 (original photograph) *with* Exs. 3-4 (cropped version). The cropped version allegedly remained on Ms. Hadid's Instagram page for a matter of days. *Id.* ¶¶ 10, 13.

Months later, Xclusive filed this suit. All the Complaint offers about Xclusive is that it is a domestic business corporation that operates out of Queens, and it claims to be the owner *or* exclusive licensee of the photograph that the unidentified photographer took of Ms. Hadid last year. *Id.* ¶¶ 1, 8, 19. Xclusive makes no allegations about how it came to have any rights in the photograph.

Although Xclusive alleges that the photograph is the "subject of a valid and complete application" for registration before the Copyright Office, *id.* ¶ 19, Xclusive's name appears nowhere on the copyright registration page attached to the Complaint, *id.*, Ex. 2. Xclusive makes no allegation that the copyright in the photograph has actually been registered.

Based on Ms. Hadid's reposting of her own image on her own Instagram page, Xclusive brings claims for direct and contributory copyright infringement. *Id.* ¶¶ 21, 24. Xclusive does not allege any damages actually suffered as the result of the alleged infringement. In its prayer for

relief, however, Xclusive seeks the maximum possible statutory damages permitted for willful infringement—that is, $150,000. *See* 17 U.S.C. § 504(c)(2).[1]

**ARGUMENT**

In order to state a claim for copyright infringement, a plaintiff must plead "(1) the specific original works [that] are the subject of the copyright claim; (2) that plaintiff owns the copyrights in those works; (3) that the copyrights were registered in accordance with 17 U.S.C. § 411; and (4) the acts by which and the time period during which the defendant infringed the copyright." *Wolo Mfg. Corp.* v. *ABC Corp.*, 349 F. Supp. 3d 176, 202 (E.D.N.Y. 2018) (quotation marks omitted). Failure to plead "enough facts to state a claim to relief that is plausible on its face" requires dismissal of a plaintiff's claim, *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007), and "mere conclusory statements" and "naked assertions devoid of further factual enhancement" will not suffice, *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and brackets omitted).

The Complaint here does not satisfy even the most basic requirements of a copyright claim, failing to allege both registration of the photograph and the ownership of accrued claims necessary to bring this action. The Complaint also makes clear that Ms. Hadid's reposting of the photograph of herself on her personal Instagram page was fair use and consistent with an implied license. Finally, the claim for contributory infringement suffers from additional defects, most

[1] Xclusive appears to rest its claim of *willful* infringement on an allegation that Ms. Hadid settled a similar lawsuit brought in the Eastern District of Virginia. Compl. ¶¶ 15-16. A settlement, of course, is not "evidence of wrongdoing." *Morris* v. *City of New York*, No. 12 Civ. 3959, 2013 WL 5781672, at *11 (E.D.N.Y. Oct. 28, 2013), *aff'd*, 604 F. App'x 22 (2d Cir. 2015). More importantly, nothing on the docket in the lawsuit referenced by the Complaint indicates that that case was settled. *See Cepeda* v. *Hadid*, No. 17 Civ. 989 (E.D. Va.). To the extent that David Deal, who served as counsel to the plaintiff in that case and also serves as Xclusive's counsel here, has disclosed confidential information pertaining to a settlement to Xclusive or to others, Ms. Hadid reserves all rights to seek an appropriate remedy. Despite appearing on the Complaint and communicating with Ms. Hadid's counsel, Mr. Deal has not filed an application for admission *pro hac vice* in this case.

notably the failure to allege any instance of primary infringement to which Ms. Hadid contributed. As set forth more fully below, the claims against Ms. Hadid should be dismissed.

## I. THE COMPLAINT DOES NOT ALLEGE BASIC ELEMENTS OF A COPYRIGHT INFRINGEMENT CLAIM

*First*, the Complaint should be dismissed because Xclusive does not allege that it has obtained the copyright registration necessary to bring this action.

The Copyright Act imposes a "statutory condition that requires a party to take some action before filing a lawsuit." *Reed Elsevier, Inc.* v. *Muchnick*, 559 U.S. 154, 166 (2010). Specifically, the Act provides that, with exceptions not relevant here, "no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Registration occurs when the Copyright Office, "after examination, . . . determines that . . . the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met." *Id.* § 410(a).

By its own account, Xclusive has not registered the photograph. It alleges only that it has submitted "a valid and complete application" to the Copyright Office. Compl. ¶ 19. But the law is clear that merely submitting "the application, materials, and fee required for registration" is insufficient. *Fourth Estate Pub. Benefit Corp.* v. *Wall-Street.com, LLC*, 139 S. Ct. 881, 888 (2019); *accord, e.g.*, *Corbis Corp.* v. *UGO Networks, Inc.*, 322 F. Supp. 2d 520, 521 (S.D.N.Y. 2004) (dismissing case "even though [the images at issue were] the subject of pending applications for registration"). Rather, "registration occurs, and a copyright claimant may commence an infringement suit, when the Copyright Office registers a copyright." *Fourth Estate*, 139 S. Ct. at 886. Contrary to Xclusive's suggestion, "individual District Court judges" have no "discretion" to hold otherwise. ECF No. 11 at 1. Because Xclusive filed this action

before registering the photograph, in violation of § 411(a), its Complaint must be dismissed. *See Fourth Estate*, 139 S. Ct. at 886; *Capitol Records, Inc.* v. *Wings Dig. Corp.*, 218 F. Supp. 2d 280, 284 (E.D.N.Y. 2002) (dismissing copyright claims based on pending applications).[2]

*Second*, the Complaint should be dismissed because Xclusive fails to allege facts demonstrating that it is the proper plaintiff to bring this action.

As a rule, only the "legal or beneficial owner" of a copyright is entitled to claim "infringement of [a] particular right committed *while* he or she is the owner of it." 17 U.S.C. § 501(b) (emphasis added). Because copyright "vests initially in the author or authors of the work," *id.* § 201(a), it is the photographer who might have a basis to sue for infringement that allegedly took place the day after the photograph was taken, *see* Compl. ¶¶ 8-9.

The question, then, is whether the Complaint alleges "sufficient facts" demonstrating that the unidentified photographer transferred his or her right to sue over the alleged infringement to Xclusive. *Iqbal*, 556 U.S. at 687. An original author "can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them." *ABKCO Music, Inc.* v. *Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991). The same is true for exclusive licensees, who may bring an action for past infringement only where the document granting the exclusive license "states explicitly that it includes the causes of action . . . accrued prior to the grant." *Getty Images (US) Inc.* v. *Advernet, Inc.*, 797 F.

---

[2] Dismissal would be required even if the photograph were registered while this action was pending. Where a statute bars a plaintiff from "*bringing*—not continuing to prosecute—" a lawsuit, a plaintiff cannot avoid dismissal if circumstances change during litigation. *United States ex rel. Wood* v. *Allergan, Inc.*, 899 F.3d 163, 172 (2d Cir. 2018) (filing deficiency could not be "cured" because "amended or supplemental pleading cannot change the fact that [plaintiff] *brought* an action" in violation of statute); *see also McNeil* v. *United States*, 508 U.S. 106, 111-13 (1993) (where statute provides that action "shall not be instituted" unless plaintiff has exhausted administrative remedies, dismissal is required even where remedies were exhausted post-filing); *Hallstrom* v. *Tillamook Cty.*, 493 U.S. 20, 25, 31 (1989) (where statute provides that "no action may be commenced" unless plaintiff has given 60 days' notice to defendant, dismissal of premature suit is required even if a 60-day stay could serve the same purpose). That rule applies here. Section 411(a) barred Xclusive from "institut[ing]" an action before obtaining registration. Xclusive violated this precondition, and later events cannot save it from the consequences.

Supp. 2d 399, 412-13 (S.D.N.Y. 2011). Without allegations of a written agreement expressly transferring the right to sue for past infringement, a complaint by a transferee plaintiff must be dismissed. *See, e.g.*, *Hutson* v. *Notorious B.I.G., LLC*, No. 14 Civ. 2307, 2015 WL 9450623, at *4 (S.D.N.Y. Dec. 22, 2015) (dismissing infringement claims because plaintiff "fail[ed] to plausibly allege that he owned a copyright interest in the Composition at the time of the alleged infringement . . . or was subsequently transferred copyright ownership that expressly included the right to sue for causes of action that accrued prior to his ownership"); *Papa's-June Music, Inc.* v. *McLean*, 921 F. Supp. 1154, 1160 (S.D.N.Y. 1996) (dismissing claims where "complaint does not allege a signed writing as required by" the Copyright Act and thus "there was no transfer of copyright ownership"). *Contra* ECF No. 11 at 2 (suggesting without any citation that allegations regarding assignment are "not required under the Federal Rule[s] of Civil Procedure").

The Complaint here fails to make the allegations necessary to show Xclusive's entitlement to the bring the photographer's accrued claims. The Complaint does not allege any relationship between Xclusive and the photographer, and Xclusive's name appears nowhere in the copyright application that the Complaint attaches. Instead, the Complaint simply alleges that Xclusive is "the copyright holder" or "the copyright owner or licensee of exclusive rights." Compl. ¶¶ 8, 19. But these conclusory and inconsistent allegations are insufficient under applicable pleading standards. *Iqbal*, 556 U.S. at 678. Further, even if Xclusive was an owner or exclusive licensee when this case was filed in January 2019, it does not follow that Xclusive obtained the right to bring claims for infringement allegedly committed in October 2018. *See ABKCO Music, Inc.*, 944 F.2d at 980; *Getty Images (US) Inc.*, 797 F. Supp. 2d at 412. More would be needed to show Xclusive's entitlement to sue—namely, allegations of a (i) written (ii)

assignment or an exclusive licensing agreement (iii) that expressly gives Xclusive the right to assert the photographer's accrued claims. Because the Complaint does not contain such allegations, Xclusive's claims should be dismissed. *See Hutson*, 2015 WL 9450623, at *4; *Papa's-June Music*, 921 F. Supp. at 1160.

## II. THE COMPLAINT SHOWS THAT MS. HADID'S USE OF THE PHOTOGRAPH WAS PERMISSIBLE

Even leaving aside its most obvious deficiencies, the Complaint establishes that Ms. Hadid's reposting of the photograph on her personal Instagram page was fair use and consistent with an implied license, and therefore not actionable. *See Oyewole* v. *Ora*, 291 F. Supp. 3d 422, 436 (S.D.N.Y. 2018) (dismissing infringement claims on fair use grounds).

### A. Fair Use

The fair use doctrine espouses an "equitable rule of reason" allowing others to "use the copyrighted material in a reasonable manner without [the author's] consent." *Harper & Row Publishers, Inc.* v. *Nation Enters.*, 471 U.S. 539, 549, 560 (1985) (quotation marks omitted). Fair use requires "an open-ended and context-sensitive inquiry," *Blanch* v. *Koons*, 467 F.3d 244, 251 (2d Cir. 2006), in which courts consider the four statutory factors from 17 U.S.C. § 107, along with "any other relevant considerations," to determine whether a use was fair. *Fox News Network* v. *Tveyes, Inc.*, 883 F.3d 169, 180 (2d Cir. 2018). The doctrine has been applied in a wide variety of contexts to "limit an author's rights to control original and derivative works." *Authors Guild, Inc.* v. *HathiTrust*, 755 F.3d 87, 95 (2d Cir. 2014); *see, e.g.*, *Authors Guild* v. *Google, Inc.*, 804 F.3d 202, 207 (2d Cir. 2015) (Google's copying of tens of millions of books that could be searched by internet users was fair use); *Swatch Grp. Mgmt. Servs. Ltd.* v. *Bloomberg L.P.*, 756 F.3d 73, 92 (2d Cir. 2014) (Bloomberg's dissemination to paid subscribers of plaintiff's entire sound recording of earnings call was fair use).

Here, all four fair use factors favor Ms. Hadid.

The first factor assesses "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). A principal consideration is whether a particular use is "transformative," and as a general matter, "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell* v. *Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994); *see also Blanch*, 467 F.3d at 253, 256 (first factor "strongly favored the defendants" given transformative nature of use, despite fact that appropriation of photograph earned defendants "substantial profit"). But "transformative use is not absolutely necessary," *Campbell*, 510 U.S. at 579, and where a use is not transformative, the question of "whether the new use is commercial thus acquires [greater] importance," *On Davis* v. *The Gap, Inc.*, 246 F.3d 152, 175 (2d Cir. 2001) (recognizing that in *Sony Corp. of America* v. *Universal City Studios, Inc.,* 464 U.S. 417 (1984), "the copied work was saved by its private, noncommercial character"). A use will be considered commercial where "a secondary user makes unauthorized use of copyrighted material to capture significant revenues as a direct consequence of copying the original work." *Blanch*, 467 F.3d at 253 (quoting *Am. Geophysical Union* v. *Texaco Inc.*, 60 F.3d 913, 922 (2d Cir. 1994)).

According to the Complaint, Ms. Hadid merely reposted the photograph to her Instagram page and made no effort to commercially exploit it. Compl. ¶¶ 9-11. Her reposting thus reflected a personal purpose different than the photographer's purpose in taking the photograph, which was to commercially exploit Ms. Hadid's popularity. *See Blanch*, 467 F.3d at 252 (first factor favored defendant where defendant's "purposes in using [image in collage were] sharply different from [plaintiff's] goals"); *Stern* v. *Lavender*, 319 F. Supp. 3d 650, 681 (S.D.N.Y. 2018)

(first factor favored defendants where "aim in displaying online a photograph of the works for sale" was different than artist's original purpose in creating those works). Even if Ms. Hadid's alleged use is not considered transformative, its noncommercial nature weighs strongly in her favor. Indeed, there is no allegation that Ms. Hadid, by reposting the photograph to her Instagram page, "capture[d] significant revenues as a direct consequence of copying the original work." *Blanch*, 467 F.3d at 253 (quoting *Am. Geophysical Union*, 60 F.3d 922).

The second factor looks at "the nature of the copyrighted work." 17 U.S.C. § 107(2). This inquiry into the "value of the materials used" recognizes that "some works are closer to the core of intended copyright protection than others." *Campbell*, 510 U.S. at 586 (quotation marks omitted). If a work "is of the creative or instructive type that the copyright laws value and seek to foster," the second factor will more likely favor an author. *HathiTrust*, 755 F.3d at 96 (quotation marks omitted). The law gives "greater leeway," however, to a claim of fair use "where the work is factual or informational," particularly where the work has already been published. *Oyewole*, 291 F. Supp. 3d at 435 (quoting *Blanch*, 467 F.3d at 256).

The published photograph here depicts Ms. Hadid smiling while standing in front of a non-descript building. *See* Compl., Ex. 1. It is not a studio composition but rather a quick "shot in a public setting," and there is no allegation that the photographer "attempted to convey ideas, emotions, or in any way influence [the subject's] pose, expression, or clothing." *Katz* v. *Google Inc.*, 802 F.3d 1178, 1183 (11th Cir. 2015). In such circumstances, the photograph is considered a factual work, not a creative one, thus favoring a determination of fair use. *See id.*; *Otto* v. *Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 430 (S.D.N.Y. 2018) (second factor favored fair use where photograph at wedding was "spontaneously taken to document its subjects, as they

were in the moment," and where photographer "did not direct or pose the subjects of the photo, nor control the lighting or the background").

In fact, the second factor strongly favors Ms. Hadid here because Ms. Hadid posed for the camera and thus herself contributed many of the elements that the copyright law seeks to protect. *See Rogers* v. *Koons,* 960 F.2d 301, 307 (2d Cir. 1992) (elements of originality in photograph include "posing [of] the subjects"); *see also Gillespie* v. *AST Sportswear, Inc.*, No. 97 Civ. 1911, 2001 WL 180147, at *5 (S.D.N.Y. Feb. 22, 2001) (jury could find defendant was joint author of photographs where defendant contributed to "clothing" and "poses" of models). Where creative features come not from the photographer but rather from the subject, holding the subject liable for infringement does not nothing to "foster" what the Copyright Act values, *HathiTrust*, 755 F.3d at 96, and may well do the opposite, *see Oyewole*, 291 F. Supp. 3d at 432-33 ("ultimate test of fair use" is whether copyright's goals "would be better served by allowing the use than by preventing it" (quotation marks omitted)).

The third factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). Courts examine both the "quantitative and qualitative aspects of the portion of the copyrighted material taken." *Bill Graham Archives* v. *Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006). Generally speaking, "the more of a copyrighted work that is taken, the less likely the use is to be fair." *Infinity Broad. Corp.* v. *Kirkwood*, 150 F.3d 104, 109 (2d Cir. 1998). However, even "copying the entirety of a work" will not "necessarily weigh against" a fair use determination. *Bill Graham Archives*, 448 F.3d at 613.

Here, the version of the photograph that Ms. Hadid allegedly posted on Instagram appears to be roughly 50 percent of the original: the bottom half of the photograph is removed,

and the top half is more tightly framed around Ms. Hadid herself. *See* Compl., Exs. 1, 3-4. The cropped photograph thus focuses more heavily on Ms. Hadid's contributions to the photograph (her pose, including the positioning of her hand below her chin) and deemphasizes the photographer's (overall framing of the photograph). *See Blanch*, 467 F.3d at 258 (third factor favored fair use where, *inter alia*, cropped image did not reflect photographer's "key creative decisions"). Because the allegedly infringing image uses just a portion of the original and takes no more than is necessary to capture Ms. Hadid's own contributions, the third fair use factor weighs in Ms. Hadid's favor.

The fourth factor looks at "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). It is the most "important element of fair use" and "focuses on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues." *Fox News*, 883 F.3d at 179 (quotation marks omitted).

The Complaint does not allege that Ms. Hadid's use deprived Xclusive of any, much less "significant," revenue. *Id.* Nor could it. Ms. Hadid merely posted a cropped version of an already-published photograph on her personal Instagram page. Compl. ¶¶ 9-11 & Exs. 3-4. Ms. Hadid does not claim the right to make her own licenses of the photograph to other publications, and thus any future licenses will need to be obtained from Xclusive. As a result, Ms. Hadid's Instagram post is hardly the "significantly competing substitute" the fourth fair use factor contemplates. *Google, Inc.*, 804 F.3d at 223. Moreover, there is no risk of "market harm that would result from unrestricted and widespread conduct of the same sort" that Ms. Hadid allegedly committed here. *Fox News*, 883 F.3d at 179 (quotation marks and brackets omitted). The reasons why fair use protects Ms. Hadid against Xclusive's claims are unique to her as the

subject of the photograph at issue, and a determination in her favor would not permit anyone else to repost the photograph on Instagram or use it in any other forum.

Finally, the "other relevant considerations" that courts should consider, *Fox News*, 883 F.3d at 180, also weigh in Ms. Hadid's favor. Xclusive itself emphasizes Ms. Hadid's popularity, Compl. ¶ 2, and the potential to profit from paparazzi photographs is indisputably tied to the fame of their subjects. It is one thing for paparazzi to take advantage of Ms. Hadid by surveilling her, taking photographs of her every public movement, and selling them for profit. It is quite another to demand damages based on an Instagram post by the very person whose image the photographer sought to exploit in the first place.

More pointedly still, the photograph here was only possible because of the cooperation of Ms. Hadid in the photograph's creation. Although it can be disruptive and unsettling to encounter anonymous men with cameras as she goes about her daily life, in this instance Ms. Hadid indulged the photographer and posed as he captured her image. Only by permitting subjects to make minimal personal use of the paparazzi photographs in which they appear will such subjects remain willing to facilitate the creation of such photographs in the first place. Accordingly, to the extent copyright law seeks to promote the creation of photographs like the one at issue here, that goal "would be better served by allowing [Ms. Hadid's] use than by preventing it." *Blanch*, 467 F.3d at 251 (quotation marks omitted).

These considerations, in combination with the four statutory factors, warrant dismissal of the Complaint on fair use grounds. *See Oyewole*, 291 F. Supp. 3d at 436.

**B. Implied License**

Xclusive's claims also fail because the Complaint shows that Ms. Hadid had an implied license permitting her to repost the photograph on Instagram.

Under federal law, "nonexclusive licenses may be granted orally, or may even be implied from conduct." *Graham* v. *James*, 144 F.3d 229, 235 (2d Cir. 1998) (quotation marks and ellipses omitted). Although the law on implied licenses "shows a measure of conflict," courts generally look to parties' conduct to determine whether there "was a 'meeting of the minds' between the parties to permit the particular usage at issue." *Psihoyos* v. *Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 119, 124 (S.D.N.Y. 2012) (citation omitted). An implied license arises out of "objective conduct that would permit a reasonable person to conclude that an agreement had been reached." *Joe Hand Promotions, Inc.* v. *Maupin*, No. 15 Civ. 6355, 2018 WL 2417840, at *5 (E.D.N.Y. May 25, 2018) (quoting *Design Options, Inc.* v. *BellePointe, Inc.*, 940 F. Supp. 86, 92 (S.D.N.Y. 1996)).

Such objective conduct is present here. As the Complaint's exhibits show, Ms. Hadid encountered the photographer as she exited a building. She stopped to permit the photographer to take her picture and, by posing, contributed to the photograph's protectable elements. *See Rogers*, 960 F.2d at 307; *Gillespie*, 2001 WL 180147, at *5. And in that moment, the photographer elected to take a photograph, which was indisputably made more valuable through Ms. Hadid's participation in its creation. In other words, only as a result of the mutual actions of Ms. Hadid and the photographer was a photograph of a smiling Ms. Hadid even possible. *See* ECF No. 11 at 3 (admitting that "well-executed photographs of [Ms. Hadid] are extremely valuable"). In these circumstances, a license can, and should, be implied permitting Ms. Hadid to use the photograph—at least in ways that do not interfere with the photographer's ability to profit.

## III. THE COMPLAINT FAILS TO ALLEGE ANY OF THE ELEMENTS OF CONTRIBUTORY INFRINGMENT

Xclusive's claim for contributory copyright infringement fails for a host of independent reasons.

A person may have contributory liability for copyright infringement only where he, "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Faulkner* v. *Nat'l Geographic Enters. Inc.,* 409 F.3d 26, 40 (2d Cir. 2005). The law makes clear—and the word "contributory" does too—that "there can be no contributory infringement absent actual infringement." *Id.* Thus, where the complaint fails to "alleg[e] a primary copyright infringement," a secondary infringement claim is "deficient" and must be dismissed. *Reis, Inc.* v. *Lennar Corp.*, No. 15 Civ. 7905, 2016 WL 3702736, at *4 (S.D.N.Y. July 5, 2016) (dismissing secondary infringement claims where complaint offered "no information or facts alleging that [unidentified persons who downloaded real estate reports] were primary infringers").

The Complaint fails to satisfy this most basic requirement. Xclusive alleges, without more, that it "is informed and believes that Hadid, without the permission or consent of Xclusive, knowingly made available Copyrighted Photograph to innumerable individuals and media outlets by posting Copyrighted Photograph to Hadid's 43 million (43,000,000) Instagram followers." Compl. ¶ 24. But Xclusive nowhere identifies an instance where any of these "innumerable" persons actually violated the copyright in the photograph. *Cf. Wolo Mfg. Corp.*, 349 F. Supp. 3d at 202 (primary infringement requires plaintiff to plead, *inter alia*, "the acts by which and the time period during which the [other person] infringed the copyright"). Because the Complaint contains no allegations of direct infringement by another person, Xclusive's contributory infringement against Ms. Hadid must be dismissed. *Reis, Inc.*, 2016 WL 3702736, at *4.

This claim fails for other reasons as well. Even if Xclusive were able to allege another person's direct infringement, Ms. Hadid would be liable only if she both had "knowledge of the underlying direct infringement" and took "substantial" steps to "encourage[] or assist[] the infringement." *Stanacard, LLC* v. *Rubard, LLC*, No. 12 Civ. 5176, 2016 WL 462508, at *14 (S.D.N.Y. Feb. 3, 2016) (quotation marks omitted). The Complaint alleges neither. Instead, it rests on speculation that someone might copy the photograph from Ms. Hadid's Instagram page and reproduce it elsewhere. Compl. ¶ 24. Such hypothesizing will not suffice, and Xclusive's failure to plead facts supporting an inference that Ms. Hadid "acted in concert with [a] direct infringer" provides additional grounds on which to dismiss Xclusive's contributory infringement claim. *Gym Door Repairs, Inc.* v. *Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 898 (S.D.N.Y. 2016) (quotation marks omitted).

**CONCLUSION**

For the foregoing reasons, Ms. Hadid's motion to dismiss should be granted.

Dated: New York, New York
May 1, 2019

Respectfully submitted,

John C. Quinn
Matthew J. Craig
Talia I. Nissimyan
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
(212) 763-0883
jquinn@kaplanhecker.com
mcraig@kaplanhecker.com
tnissimyan@kaplanhecker.com

*Attorneys for Defendant*