UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| XCLUSIVE-LEE, INC., <br><br> Plaintiff, <br> v. <br><br> JELENA NOURA "GIGI" HADID, <br><br> Defendant. | No. 19 Civ. 520 |

**REPLY MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

 

John C. Quinn
Matthew J. Craig
Talia I. Nissimyan
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
(212) 763-0883

*Attorneys for Defendant*

June 5, 2019

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.   XCLUSIVE CONFIRMS THAT THE COMPLAINT DOES NOT SATISFY BASIC REQUIREMENTS FOR BRINGING A COPYRIGHT SUIT ........................................... 2

    II.  XCLUSIVE FAILS TO OVERCOME ADDITIONAL GROUNDS FOR DISMISSAL BASED ON THE FAIR USE AND IMPLIED LICENSE DOCTRINES ........................... 4

        A.   Fair Use ................................................................................................................ 4

        B.   Implied License .................................................................................................... 9

    III. XCLUSIVE'S SPECULATION IS INSUFFICIENT TO SAVE ITS CLAIM FOR CONTRIBUTORY INFRINGEMENT ............................................................................. 9

CONCLUSION ............................................................................................................................ 11

## TABLE OF AUTHORITIES

**PAGE(S)**

### CASES

*ABKCO Music, Inc.* v. *Harrisongs Music, Ltd.*,
944 F.2d 971 (2d Cir. 1991) ................................................................................................... 3

*Am. Geophysical Union* v. *Texaco Inc.*,
60 F.3d 913 (2d Cir. 1994) ................................................................................................. 4, 7

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009) ............................................................................................................. 10

*Authors Guild, Inc.* v. *HathiTrust*,
755 F.3d 87 (2d Cir. 2014) .................................................................................................... 6

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007) ............................................................................................................. 10

*Blanch* v. *Koons*,
467 F.3d 244 (2d Cir. 2006) .................................................................................................. 4

*Burrow-Giles Lithographic Co.* v. *Sarony*,
111 U.S. 53 (1884) ................................................................................................................ 6

*Campbell* v. *Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) ............................................................................................................... 4

*Capitol Records, Inc.* v. *Wings Dig. Corp.*,
218 F. Supp. 2d 280 (E.D.N.Y. 2002) ................................................................................... 3

*Cariou* v. *Prince*,
714 F.3d 694 (2d Cir. 2013) .................................................................................................. 7

*Compaq Comput. Corp.* v. *Ergonome Inc.*,
387 F.3d 403 (5th Cir. 2004) ................................................................................................. 5

*Corbis Corp.* v. *UGO Networks, Inc.*,
322 F. Supp. 2d 520 (S.D.N.Y. 2004) ................................................................................... 3

*Faulkner* v. *Nat'l Geographic Enters. Inc.*,
409 F.3d 26 (2d Cir. 2005) .................................................................................................. 10

*Fourth Estate Pub. Benefit Corp.* v. *Wall-Street.com, LLC*,
139 S. Ct. 881 (2019) ............................................................................................................. 2

*Fox News Network* v. *Tveyes, Inc.*,
   883 F.3d 169 (2d Cir. 2018) ............................................................................................... 7

*Graham* v. *Prince*,
   265 F. Supp. 3d 366 (S.D.N.Y. 2017) ................................................................................ 7

*House of Bryant Publications, LLC* v. *A & E Television Networks*,
   No. 09 Civ. 502, 2009 WL 3673055 (M.D. Tenn. Oct. 30, 2009) ...................................... 8

*Hutson* v. *Notorious B.I.G., LLC*,
   No. 14 Civ. 2307, 2015 WL 9450623 (S.D.N.Y. Dec. 22, 2015) ....................................... 3

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   361 F. Supp. 3d 324 (E.D.N.Y. 2019) ................................................................................ 2

*In re Picard*,
   917 F.3d 85 (2d Cir. 2019) ................................................................................................. 2

*Joe Hand Promotions, Inc.* v. *Maupin*,
   No. 15 Civ. 6355, 2018 WL 2417840 (E.D.N.Y. May 25, 2018) ....................................... 9

*Katz* v. *Google Inc.*,
   802 F.3d 1178 (11th Cir. 2015) .......................................................................................... 5

*Lombardo* v. *Dr. Seuss Enters., L.P.*,
   279 F. Supp. 3d 497 (S.D.N.Y. 2017) ................................................................................ 4

*On Davis* v. *The Gap, Inc.*,
   246 F.3d 152 (2d Cir. 2001) ............................................................................................... 4

*Otto* v. *Hearst Commc'ns, Inc.*,
   345 F. Supp. 3d 412 (S.D.N.Y. 2018) ................................................................................ 5

*Oyewole* v. *Ora*,
   291 F. Supp. 3d 422 (S.D.N.Y. 2018) ................................................................................ 8

*Papa's-June Music, Inc.* v. *McLean*,
   921 F. Supp. 1154 (S.D.N.Y. 1996) ................................................................................... 3

*Rentmeester* v. *Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018) ............................................................................................ 6

*Reis, Inc.* v. *Lennar Corp.*,
   No. 15 Civ. 7905, 2016 WL 3702736 (S.D.N.Y. July 5, 2016) ........................................ 10

*Richard Anderson Photography* v. *Brown*,
   No. 85 Civ. 373, 1990 WL 538929 (W.D. Va. Apr. 16, 1990) .......................................... 7

*Stanacard, LLC* v. *Rubard, LLC*,
  No. 12 Civ. 5176, 2016 WL 462508 (S.D.N.Y. Feb. 3, 2016) .................................................. 10

*TCA Television Corp.* v. *McCollum*,
  839 F.3d 168 (2d Cir. 2016) ................................................................................................. 7, 8

*United States ex rel. Hanks* v. *U.S. Oncology Speciality, LLP*,
  336 F. Supp. 3d 90 (E.D.N.Y. 2018) ......................................................................................... 3

*Wolo Mfg. Corp.* v. *ABC Corp.*,
  349 F. Supp. 3d 176 (E.D.N.Y. 2018) ..................................................................................... 10

**STATUTES**

17 U.S.C. § 411 ................................................................................................................................ 2, 3

## PRELIMINARY STATEMENT

Xclusive's opposition makes no effort to deny the twisted dynamic at the heart of this case. A paparazzo followed Ms. Hadid so he could take her picture and exploit her image for profit. When Ms. Hadid came upon the photographer outside a Manhattan building, she stopped and posed for the camera. In that moment, the paparazzo snapped a photograph, undoubtedly made more valuable by Ms. Hadid's participation. Xclusive vaguely alleges that it later became an owner or exclusive licensee of that photograph, and Xclusive apparently decided that capitalizing on Ms. Hadid's fame through licensing her image was not enough. So Xclusive sued Ms. Hadid, seeking significant monetary damages based on allegations that she reposted a cropped version of the photograph of herself to her personal Instagram page.

Xclusive's opposition leaves no doubt that the Complaint fails to state a claim upon which relief may be granted. Xclusive asks the Court to ignore a binding Supreme Court decision that requires a plaintiff in a copyright suit to have the registration in hand at the time of filing. Xclusive also suggests, contrary to precedent, that it can bring the photographer's accrued claims without alleging facts that show it has a right to do so. Further, Xclusive exaggerates the scope of Ms. Hadid's fair use and implied license arguments, which are unique to Ms. Hadid and would permit only her narrow use of the photograph. And, faced with an unambiguous rule that contributory infringement claims require allegations of primary infringement that someone else committed, Xclusive asks the Court to just "assume" someone did.

The opposition's failure to address the fundamental defects in the Complaint underscores what this case really is: an effort to extract a settlement through the mere pendency of litigation, with little concern for basic requirements of copyright law or for the waste of judicial resources that this suit engenders. The Court should put an end to this abuse of the Copyright Act.

**ARGUMENT**

I.  **XCLUSIVE CONFIRMS THAT THE COMPLAINT DOES NOT SATISFY BASIC REQUIREMENTS FOR BRINGING A COPYRIGHT SUIT**

Xclusive attempts to evade two basic requirements that a plaintiff must satisfy to bring a copyright claim. Xclusive's half-baked opposition only confirms that dismissal is appropriate.[1]

Xclusive first asks the Court to ignore binding precedent on the requirement that a plaintiff not sue for infringement until "registration of the copyright claim has been made." 17 U.S.C. § 411(a). A unanimous Supreme Court recently held that "the only satisfactory reading" of this provision is that registration occurs "when the Copyright Office grants registration," not when a copyright holder submits an application. *Fourth Estate Pub. Benefit Corp.* v. *Wall-Street.com, LLC*, 139 S. Ct. 881, 888 (2019). Submitting an application is all that Xclusive claims to have done here. Compl. ¶ 19.

Xclusive seems to believe that just because it filed its Complaint before *Fourth Estate* was decided, this Court is free to ignore that decision and craft its own interpretation of § 411(a) as a matter of "discretion." Opp'n at 2. That is not how statutory interpretation works. *See In re Picard*, 917 F.3d 85, 101 (2d Cir. 2019) (interpretation of statutes is a matter of law, not "a matter of judicial discretion"). Nor is it how *stare decisis* works. *See In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 337 (E.D.N.Y. 2019) ("The doctrine of stare decisis compels a district court to abide by the legal decisions of higher courts in the same jurisdiction."). When a higher court hands down a definitive interpretation of a statutory

---

[1] In addition to its more substantive shortcomings, Xclusive's opposition includes unfilled placeholders and passages lifted from other briefs with the names of other parties from other cases. Opp'n at 6, 7, 11. The brief also makes further reference to a purported settlement in another case whose existence is not confirmed by the public record. Opp'n at 2. Ms. Hadid previously noted that David Deal was counsel to the plaintiff in that case, and reserved all rights to seek an appropriate remedy if Mr. Deal "disclosed confidential information pertaining to a settlement to Xclusive or to others." MTD at 3 n.1 In its opposition, Xclusive offers no response to this concern and instead doubles down by referencing the purported settlement again. Ms. Hadid continues to reserve all rights.

provision, that interpretation is binding in pending litigation. *See, e.g.*, *United States ex rel. Hanks* v. *U.S. Oncology Speciality, LLP*, 336 F. Supp. 3d 90, 99, 115 (E.D.N.Y. 2018) (dismissing case based on statutory filing bar, even though Second Circuit rendered the relevant interpretation of that bar eight years after Hanks filed his suit).

Simply put, *Fourth Estate* binds this Court. And even if it didn't, Xclusive offers no reason for the Court to depart from an interpretation compelled by the statutory text, adopted by all nine justices, and consistent with longstanding authority in this Circuit. *See, e.g.*, *Corbis Corp.* v. *UGO Networks, Inc.*, 322 F. Supp. 2d 520, 521-22 (S.D.N.Y. 2004); *Capitol Records, Inc.* v. *Wings Dig. Corp.*, 218 F. Supp. 2d 280, 284 (E.D.N.Y. 2002). The photograph of Ms. Hadid was not registered at the time of filing as § 411(a) plainly requires, and the Complaint should be dismissed as matter of law on that basis.

Xclusive next argues that its Complaint need not include any allegations demonstrating its right to sue. Opp'n at 3. Besides a cursory reference to Rule 8, Xclusive identifies no authority for its position and ignores clear caselaw holding that even where a photographer assigns or exclusively licenses his copyright, the assignee or exclusive licensee may bring the photographer's accrued causes of action only where the right to do so is "expressly included" in the assignment or licensing agreement. *ABKCO Music, Inc.* v. *Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991). Xclusive makes no allegations about whether and how it obtained the right to bring the photographer's accrued claims. *See* MTD at 6. The Complaint should therefore be dismissed. *See Hutson* v. *Notorious B.I.G., LLC*, No. 14 Civ. 2307, 2015 WL 9450623, at *4 (S.D.N.Y. Dec. 22, 2015) (dismissing complaint that lacked allegations of an agreement that "expressly included the right to sue for causes of action that accrued prior to [plaintiff's] ownership"); *Papa's-June Music, Inc.* v. *McLean*, 921 F. Supp. 1154, 1160 (S.D.N.Y. 1996).

## II. XCLUSIVE FAILS TO OVERCOME ADDITIONAL GROUNDS FOR DISMISSAL BASED ON THE FAIR USE AND IMPLIED LICENSE DOCTRINES

### A. Fair Use

Fair use analysis requires "an open-ended and context-sensitive inquiry." *Blanch* v. *Koons*, 467 F.3d 244, 251 (2d Cir. 2006). Xclusive fails to heed this directive, and instead overstates the narrow fair use argument that Ms. Hadid has made and ignores the significant authorities that support it.

*First factor.* Xclusive's argument on the first fair use factor is a red herring. Xclusive dedicates pages of its brief to the claim that Hadid "stated the incorrect legal standard of what qualifies as a transformative use," and concludes that Ms. Hadid's alleged use is "not even close to being transformative." Opp'n at 5.

Ms. Hadid has not claimed that her alleged use has the transformative character of, say, Matthew Lombardo's comedic play featuring a "rather down-and-out 45 year-old version of Cindy–Lou Who" from Dr. Seuss's well-known book *How the Grinch Stole Christmas*. *See Lombardo* v. *Dr. Seuss Enters., L.P.*, 279 F. Supp. 3d 497, 503, 515 (S.D.N.Y. 2017), *aff'd*, 729 F. App'x 131 (2d Cir. 2018) (finding Lombardo's play to constitute fair use of Seuss's book). But, as Ms. Hadid explained in her opening brief, MTD at 8, such "transformative use is not absolutely necessary," *Campbell* v. *Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994), and where a use is not transformative, the question of "whether the new use is commercial thus acquires [greater] importance," *On Davis* v. *The Gap, Inc.*, 246 F.3d 152, 175 (2d Cir. 2001). On that question, Xclusive acknowledges but simply rejects language from the Second Circuit's decision in *Blanch* v. *Koons*,[2] and instead offers its own formulation, purportedly based on an

---

[2] The Second Circuit said the following: "The commercial/nonprofit dichotomy concerns the unfairness that arises when a secondary user makes unauthorized use of copyrighted material to capture significant revenues as a direct

older decision of the Fifth Circuit,³ and then ends its analysis there. The simple fact is that Xclusive does not dispute that the Complaint alleges only that Ms. Hadid reposted an image to her personal Instagram page and made no effort to commercially exploit it. Compl. ¶¶ 9-11; *see* MTD 8. The first factor thus weighs in Ms. Hadid's favor.

*Second factor.* Xclusive claims that the paparazzi photograph here is a "highly creative and expressive" work because it required decisions about "timing, lighting, angle, composition, and others," and that the second factor therefore weighs in its favor. Opp'n at 6. But the photograph simply places Ms. Hadid in the center of the frame and relies on lighting and background elements over which the photographer had no control. Compl., Ex. A. If this photograph qualifies as "highly creative and expressive," so too would nearly every other photograph ever snapped on the street. Xclusive's argument cannot be squared with the distinction between factual and creative works that courts have consistently drawn, including in connection with photographs like the one here. *See, e.g.*, *Katz* v. *Google Inc.*, 802 F.3d 1178, 1183 (11th Cir. 2015) (second factor favored fair use where photograph was "merely a candid shot in public setting" and photographer did not attempt to "convey ideas, emotions, or in any way influence [the subject's] pose, expression, or clothing"); *Otto* v. *Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 430 (S.D.N.Y. 2018) (second factor favored fair use where photograph was a candid shot at wedding and photographer "did not direct or pose the subjects of the photo, nor control the lighting or the background").

---

consequence of copying the original work." *Blanch*, 467 F.3d at 253 (quoting *Am. Geophysical Union* v. *Texaco Inc.*, 60 F.3d 913, 922 (2d Cir. 1994)); *see* MTD at 8. Faced with that language, Xclusive simply asserts without citation that "the question of commerciality is *not* a question of whether Hadid did or did not use the Photograph to 'capture significant revenue.'" Opp'n at 6 (emphasis added).

³ After rejecting the Second Circuit's formulation, the opposition simply asserts the following: "Rather, the question is whether Hadid gained a commercial advantage, either directly or indirectly, as a consequence of using the Photograph without paying the customary licensing fee." Opp'n at 6 (citing *Compaq Comput. Corp.* v. *Ergonome Inc.*, 387 F.3d 403, 409 (5th Cir. 2004)).

Xclusive does not grapple with these authorities, and the two cases on which Xclusive attempts to rely, *see* Opp'n at 6-7, do nothing to advance its argument. *Burrow-Giles Lithographic Co.* v. *Sarony* established that Congress had the power to extend copyright protection to photographs, and has nothing to do with fair use. 111 U.S. 53, 60 (1884). *Rentmeester* v. *Nike, Inc.* is not a fair use case either, although it did find that a photograph of Michael Jordan exhibited a high degree of creativity where the photographer inserted a basketball hoop as a "prop" in a "whimsical[]" setting, and captured Jordan in a pose "inspired more by ballet's *grand jeté* than by any pose a basketball player might naturally adopt." 883 F.3d 1111, 1120-21 (9th Cir. 2018). If anything, Rentmeester's famous image of Jordan illustrates what "highly creative and expressive" truly means—and confirms that the photograph at issue here is undeserving of the label.

Finally, Xclusive denounces Ms. Hadid's "preposterous" claim that she "somehow maintains joint copyright" in the photograph. Opp'n at 7. But that misstates Ms. Hadid's position. *See* MTD at 9-10. Ms. Hadid has simply pointed out that because she is responsible for certain creative elements that "the copyright laws value and seek to foster" (*e.g.*, her pose), Xclusive cannot rely on those elements to swing the second fair use factor in its favor. *Authors Guild, Inc.* v. *HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014) (quotation marks omitted).

*Third factor*. Xclusive next argues that it "cannot seriously be doubted that the minimal cropping employed by Hadid here is insufficient to render [her] use fair under the third factor." Opp'n at 9. Xclusive's characterization of the cropping here as "minimal" finds no basis in the Complaint or in the cases on which Xclusive relies. A comparison of the images Xclusive submitted to the Court reveals that Ms. Hadid is alleged to have reposted about half of the original image. *See* Compl., Exs. 1, 3-4. Moreover, in both of the cases that Xclusive cites in its

opposition, *see* Opp'n at 8-9, the defendant had used all or nearly all of the work in question, and even that did not necessarily preclude a fair use finding. *See Cariou* v. *Prince*, 714 F.3d 694, 710-11 (2d Cir. 2013); *Graham* v. *Prince*, 265 F. Supp. 3d 366, 382 (S.D.N.Y. 2017).

Xclusive's further suggestion that the "heart" of the photograph "remains intact" only doubles downs on the fundamental error that undermines Xclusive's argument on the second factor. Opp'n at 10. The cropping here resulted in an image that emphasizes Ms. Hadid's unique pose and deemphasizes any independent decisions made by the photographer, such as the framing of the original image. Because the cropped version takes no more than is necessary to capture Ms. Hadid's contributions, the third fair use factor weighs in Ms. Hadid's favor.

*Fourth factor*. Xclusive's argument on the "most important" fair use factor rests on an error of law and a misunderstanding of Ms. Hadid's claim. *Fox News Network* v. *Tveyes, Inc.*, 883 F.3d 169, 179 (2d Cir. 2018).

Xclusive contends that Ms. Hadid's "use of the Photograph serves as a market substitute for the Photograph, and that alone tips the balance of this factor in favor of Plaintiff." Opp'n at 10. But a defendant's use in itself is insufficient to make the fourth factor weigh in a plaintiff's favor. Indeed, the Second Circuit has roundly rejected efforts to focus "on possible lost licensing fees from [a defendant's] challenged use" because doing so would mean that the fourth factor would "always favor [a] copyright owner." *TCA Television Corp.* v. *McCollum*, 839 F.3d 168, 186 (2d Cir. 2016) (citing *Am. Geophysical Union*, 60 F.3d at 929 n.17).[4]

---

[4] It is true that the Western District of Virginia's unpublished 1990 decision in *Richard Anderson Photography* v. *Brown* apparently considered the loss of licensing fees from the defendant in its fair use analysis. No. 85 Civ. 373, 1990 WL 538929, at *2 (W.D. Va. Apr. 16, 1990); *see* Opp'n at 10. But that case, which concerned images used without permission in a fundraising brochure, is easily distinguished from the instant one, and, in any event, the language that Xclusive quotes runs counter to the authorities that bind this Court.

Xclusive further contends that if Ms. Hadid's fair use argument is accepted, "potential licensees of the Photograph will no longer be incentivized to pay a licensing fee to use the Photograph" and instead "could simply copy the version published by Hadid for free." Opp'n at 10. That argument mistakes Ms. Hadid's claim. The fair use argument here is unique to Ms. Hadid and confined by the facts that (1) Ms. Hadid is the subject of the photograph (2) who participated in its creation and (3) whose celebrity the photographer sought to exploit in the first place. Unlike the cases on which Xclusive relies, *see id.* at 10-11, this is not a case where deeming Ms. Hadid's use fair would obviate the need for other potential licensees to seek a license from Xclusive to use the photograph. *Cf. TCA Television Corp.*, 839 F.3d at 186 (accepting plaintiff's allegation that permitting play's verbatim incorporation of Abbott and Costello routine could affect the active market for licensing similar derivative works); *House of Bryant Publications, LLC* v. *A & E Television Networks*, No. 09 Civ. 502, 2009 WL 3673055, at *9 (M.D. Tenn. Oct. 30, 2009) (agreeing with plaintiff's argument that if every potential licensee could rely on defendant's theory to make unlicensed use of "Rocky Top" song, plaintiff's licensing ability would be eroded). Thus, finding fair use in these circumstances would not deprive Xclusive of any, let alone significant, revenue.

*Other considerations*. Xclusive fails altogether to address the "other relevant considerations" that Ms. Hadid set forth in her brief and that cases like *Fox News* instruct courts to consider. MTD at 7, 12. At bottom, this dispute exists only because the photographer sought to exploit Ms. Hadid's fame and image, and the photograph at issue was possible only because of Ms. Hadid's participation in its creation. *Id.* at 12. Taking these considerations and the four statutory factors together, the Court should dismiss the Complaint on fair use grounds. *See Oyewole* v. *Ora*, 291 F. Supp. 3d 422, 436 (S.D.N.Y. 2018).

### B. Implied License

The implied license doctrine provides a similarly narrow basis on which to dismiss the Complaint. Xclusive howls that Ms. Hadid's implied license argument "runs counter to all prior established legal holdings" and is a "blatant attempt to rewrite established legal doctrine." Opp'n at 11-12. Tellingly, Xclusive cites not a single case to back up its melodramatic argument and fails to identify a single error in any of the cases on which Ms. Hadid relies. *See* MTD at 13.

Xclusive similarly overreaches with its claim that acknowledging Ms. Hadid's implied license here would "obliterate[]" the copyrights of "the majority of the world's authors." Opp'n at 12. The license that this Court should imply is premised on the undisputed "objective conduct" that enabled this particular photograph to be taken. *Joe Hand Promotions, Inc.* v. *Maupin*, No. 15 Civ. 6355, 2018 WL 2417840, at *5 (E.D.N.Y. May 25, 2018) (quotation marks omitted).[5] The implied license here would be narrow, allowing use of the already published photograph only "in ways that do not interfere with the photographer's ability to profit." MTD at 13. Given the contours of this license, and the unique circumstances in which such a license could be implied, dismissing on implied license grounds would hardly have the "obliterating" effect of which Xclusive warns.

### III. XCLUSIVE'S SPECULATION IS INSUFFICIENT TO SAVE ITS CLAIM FOR CONTRIBUTORY INFRINGEMENT

Xclusive all but concedes that its contributory infringement claim is insufficient as a matter of law. To state such a claim, a plaintiff must allege an instance of primary infringement,

---

[5] Xclusive offers up four factual questions about circumstances surrounding the photograph's creation in an effort to suggest that Ms. Hadid's implied license argument is best decided after discovery. Opp'n at 11-12. Two of Xclusive's questions ("How far was the photographer from Hadid when the Photograph was captured?" and "Did Hadid know the photographer?") have no apparent relevance to whether Ms. Hadid has an implied license. The other two ("Did Hadid and the photographer exchange words?" and "Did Hadid ask about using the Photograph?") are pure speculation without any basis. In any event, the Complaint, together with its exhibits, is sufficient to establish the existence of an implied license.

*Faulkner* v. *Nat'l Geographic Enters. Inc.,* 409 F.3d 26, 40 (2d Cir. 2005), and that the defendant had "knowledge of the underlying direct infringement" and took "substantial" steps to "encourage[] or assist[]" it, *Stanacard, LLC* v. *Rubard, LLC*, No. 12 Civ. 5176, 2016 WL 462508, at *14 (S.D.N.Y. Feb. 3, 2016) (quotation marks omitted). The Complaint here pleads no facts that would satisfy these requirements, and the opposition makes no effort to contend otherwise. *See* Opp'n at 12. Instead, Xclusive muses that it is "safe to assume that a percentage of the followers that 'liked' the infringing [Instagram] post also took the time to 'share' the post." *Id.* But Xclusive has filed a Complaint in a federal court, where the law requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007), and provides that "mere conclusory statements" and "naked assertions devoid of further factual enhancement" will not suffice, *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and brackets omitted). Xclusive's "assum[ption]" is insufficient to state a claim, and the contributory infringement claim, therefore, must be dismissed. *See, e.g.*, *Wolo Mfg. Corp.* v. *ABC Corp.*, 349 F. Supp. 3d 176, 202 (E.D.N.Y. 2018); *Reis, Inc.* v. *Lennar Corp.*, No. 15 Civ. 7905, 2016 WL 3702736, at *4 (S.D.N.Y. July 5, 2016).

## CONCLUSION

For the reasons set forth above, as well as those set forth in Ms. Hadid's opening brief, the Court should grant Ms. Hadid's motion to dismiss.

Dated: New York, New York
June 5, 2019

Respectfully submitted,

John C. Quinn
Matthew J. Craig
Talia I. Nissimyan
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
(212) 763-0883
jquinn@kaplanhecker.com
mcraig@kaplanhecker.com
tnissimyan@kaplanhecker.com

*Attorneys for Defendant*