UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| XCLUSIVE-LEE, INC., | |
| Plaintiff, | |
| v. | Civil Action No.: |
| | 1:19-cv-00520-PKC-CLP |
| JELENA NOURA "GIGI" HADID, | |
| Defendant. | |

PLAINTIFF'S OPPOSITION AND ACCOMPANYING MEMORANDUM OF LAW TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, XCLUSIVE-LEE, INC. ("Xclusive" or "Plaintiff"), by and through his undersigned counsel, respectfully opposes Defendant's Motion to Dismiss. In support of this opposition, Plaintiff submits the following Memorandum in Support of Plaintiff's Opposition to Motion to Dismiss:

INTRODUCTION

Defendant JELENA NOURA "GIGI" HADID ("Hadid" or "Defendant") is indeed a famous American supermodel. Hadid is also a brand. Hadid is estimated to be the world's highest paid model with a net worth of twenty million dollars ($20,000,000.00). Hadid receives significant income from modeling, as well as by serving as pitchwoman for various advertising companies with global reach, including but not limited to the following: Prada, Sunglasses Hut, Reebok, Tommy Hilfiger, Missoni, Stuart Weitzman, Moschino, Tom Ford, and Fendi.

Hadid maintains and supports her brand by keeping herself in the news by chronicling her exploits on social media, including Instagram. As of the date of this filing, Hadid claims more than forty-seven million (47,000,000) Instagram followers. Hadid regularly posts photographs of herself to her Instagram account that are not her intellectual property and for which she has not properly received permission nor license from the copyright holder. Prior to the current lawsuit, Hadid was the subject of a nearly-identical suit that claimed she infringed on a photographer's copyrighted work by posting the image to her Instagram and Twitter accounts. Since Hadid settled the previous case, Hadid has continued to exploit the intellectual property of others, improperly claiming she is entitled to exploit the images because she is the subject, while simultaneously decrying the actions of the photographers who capture the images she appropriates for her financial gain.

## ARGUMENT

I. THE COMPLAINT ALLEGES THE REQUIRED ELEMENTS OF A COPYRIGHT INFRINGEMENT CLAIM

Plaintiff Xclusive-Lee, Inc. ("Xclusive") filed the Complaint in this case January 28, 2019. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC* was decided March 4, 2019. Prior to *Fourth Estate*, the Second Circuit had expressly refused to decide on the application/registration rule debate, leaving the issue to the discretion of individual District Court judges.

Copyright infringement is a strict liability cause of action and occurs when a copyrighted work is reproduced, distributed, performed, publicly displayed, or made into a derivative work without the permission of the copyright owner. To demonstrate a *prima facie* case of copyright infringement in a complaint, a plaintiff must allege two elements: 1) ownership of a valid

copyright; and 2) copying. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).

Xclusive has identified itself as the owner of the copyrighted photograph at issue in this case ("Photograph"). Xclusive has alleged Hadid copied the Photograph without license or permission from Xclusive.

Additionally, the assignment between the Assignor (and author of the Photograph) and Xclusive explicitly states Assignor sold and assigned Xclusive "full right to sue for and recover all profits and damages recoverable for past infringement of the same." Xclusive did not include a copy of the assignment with its complaint because it was not required under the Rule 8(a)(2) of the Federal Rules of Civil Procedure: "a short and plain statement of the claim showing that the pleader is entitled to relief;"

II. THE COMPAINT DOES NOT SHOW THAT MS. HADID'S USE OF THE PHOTOGRAPH WAS PERMISSIBLE

A. Fair Use

Under Section 107(1) of the U.S. Copyright Act, whether or not Hadid's use weighs in favor of fair use under the first fair use factor requires an inquiry as to "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes[.]" 17 U.S.C. § 107(1).

The 1994 landmark U.S. Supreme Court decision of *Campbell v. Acuff-Rose Music, Inc.* is largely responsible for the consideration of "transformative" use by the courts under the first fair use factor. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). In *Campbell*, the Court held that, because parody is a form of criticism, and thus can provide a "social benefit, by shedding light on an earlier work, and, in the process, creating a new one[,]" and thus "has an

obvious claim to transformative value," a parodic work properly falls within the enumerated fair uses within the preamble of Section 107. Id.

Since *Campbell*, many courts have widely recognized two sub-factors as being particularly relevant to the first factor analysis: (1) "whether the new work is transformative"; and (2) "the extent to which the use serves a commercial purpose." Importantly, not every use that is merely different in purpose from the original qualifies as a transformative use; rather, there has developed a number of criteria that courts look to in the analysis, all of which require a significant justification for the secondary use. See *Campbell*, 510 U.S. at 580 ("If, on the contrary, the commentary has no critical bearing on the substance or style of the original composition, which the alleged infringer merely uses to get attention or to avoid the drudgery in working up something fresh, the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish), and other factors, like the extent of its commerciality, loom larger." (emphasis added)). Hadid has not transformed whatsoever the photograph at issue in this case.

Hadid stated the incorrect legal standard of what qualifies as a transformative use. To begin with, it is useful to review what the Supreme Court actually stated in *Campbell*, where the Court explained that if the secondary work "has no critical bearing on the substance or style of the original . . . the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish)[.]" *Campbell*, 510 U.S. at 580. Accordingly, "[t]he central purpose of this investigation is to see . . . whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" *Id*. at 579 (emphasis added) (citations omitted).

The purported purpose of Hadid in using the Photograph here is not even close to being transformative. Accordingly, under the language of *Campbell* itself, the second work must actually either make some critical use of, or change to, the original work to qualify as transformative. Hadid's use of the Photograph here does nothing of the sort. The Photograph is a well-executed, candid, street photograph of Ms. Hadid. Hadid posted it in its original, barely-cropped form for the purpose of depicting exactly that. Hadid has not claimed she copied and posted the Photograph for any of the established albeit narrowly defined statutory allowances, including commentary, criticism, reporting, or research.

Hadid also improperly asserts the improper legal standard for commercial use. Generally, "[c]onsideration of the purpose and character of the use includes an examination of 'whether [the] use is of a commercial nature or is for nonprofit educational purpose.'" *Bouchat v. Balt. Ravens Ltd. P'ship*, 619 F.3d 301, 310 (4th Cir. 2010) (quoting 17 U.S.C. § 107(1)). Additionally, the United States Supreme Court has opined, "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row v. Nation Enters.*, 471 U.S. 539, 562 (1985).

The broad legal standard for commerciality recognizes two types of for-profit endeavors, each of which may be considered a commercial purpose: "direct profits (generated by selling an infringing product) and indirect profits (revenue earned from operations enhanced by the infringement)." *TD Bank, N.A. v. Hill*, No. 12-7188 (RBK/JS), 2015 U.S. Dist. LEXIS 97409, at *63 (D.N.J. July 27, 2015); see also *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 921 (2d Cir. 1994) (recognizing this distinction); *L.A. Times v. Free Republic*, No. CV 98-7840 MMM (AJWx), 2000 U.S. Dist. LEXIS 5669, at *48-49 (C.D. Cal. Mar. 31, 2000).

Therefore, the question of commerciality is not a question of whether Hadid did or did not use the Photograph to "capture significant revenue." Rather, the question is whether Hadid gained a commercial advantage, either directly or indirectly, as a consequence of using the Photograph without paying the customary licensing fee. See *Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 409 (5th Cir. 2004) ("While Compaq did not produce the SCG for individual sale or profit, the Supreme Court has noted that 'the crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price.' Thus, the inclusion of the SCG with each Compaq computer constitutes a commercial use of the copied material.") (quoting *Harper & Row*, 471 U.S. at 562).

In summary, the Hadid's reasoning under the first fair use factor is based on erroneous factual and legal assertions. As detailed above, this factor weighs in favor of Plaintiff.

The second statutory fair use factor is focused on the nature of the original work. The Photograph in this case is undoubtedly a highly creative and expressive, not factual, work. It is not just a mere snapshot of an individual on a street corner taken on a cellphone; the Photograph in this case is a highly creative work, involving a number of creative choices including timing, lighting, angle, composition, and others. Taken to its logical conclusion, the Hadid's position would deem any photograph of a real-world location or individual to be a factual, thinly-protected work.

The Photograph therefore should not be analyzed based solely on the identity or location of its subject; rather, the focus should be on the various creative and original elements comprising the work itself. See *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60 (1884). In short, this was not a conventional shot of Ms. Hadid, and in fact, Brammer had to

obtain special permission to photograph the street from his particular shooting location; see *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1120 (9th Cir. 2018) ("Rentmeester's photo is undoubtedly entitled to broad rather than thin protection. The range of creative choices open to Rentmeester in producing his photo was exceptionally broad; very few of those choices were dictated by convention or subject matter."). As such, this factor should weigh in favor of Brammer.

Concerning Hadid's assertion that she somehow maintains joint copyright in the Photograph because she noticed the photographer and smiled at the moment the photographer chose to snap the shutter is preposterous. Ms. Hadid is as much a joint copyright holder in the Photograph as the subject of a biography is joint copyright holder to the words used by the author to describe her life.

Hadid's assertion tests the limits of cynicism because Hadid has gone out of her way to criticize photographers like the author of the Photograph as a necessary evil of the publicity she receives. []. Also, it is well worth pointing out Hadid makes a point of regularly copying these same street photographs (to be fair, Hadid regularly copies and posts runway images of her without license or permission of the copyright holders) of herself to her Instagram page []., which contribute to her online presence, popularity, and most importantly her marketability. If Hadid were genuinely interested in accomplishing the same thing but without being a serial copyright infringer, she could properly license the images or hire someone to take similar photographs of her liking. Instead, Hadid wants to have it both ways. She derides the individuals who capture photographs of her, then turns around and appropriates their work.

When weighed with the highly creative nature of the Photograph in this case, the second factor should be weighed in Plaintiff's favor.

The third fair use factor requires consideration of "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). Regarding the "amount" taken, "as the amount of the copyrighted material that is used increases, the likelihood that the use will constitute a 'fair use' decreases." *A. V. Ex Rel. Vanderhye v. iParadigms, LLC*, 562 F.3d at 642.

As to substantiality, "this statutory factor also requires courts to consider, in addition to quantity, the 'quality and importance' of the copyrighted materials used, that is, whether the portion of the copyrighted material was 'the heart of the copyrighted work.'" *Id*. (internal citations and quotations omitted); see *Campbell*, 510 U.S. at 587.

Further, "the extent of permissible copying varies with the purpose and character of the use." *Campbell*, 510 U.S. at 586-87 (1994). In other words, whether or not the use is commercial and transformative bears on how much of the first work can be taken in order to be considered a fair use.

As argued more fully above, with respect to aesthetic alterations of the Photograph, Hadid's unauthorized copying involved minimal cropping of the Photograph. Two cases involving the alleged infringement of photographic works by appropriation artist Richard Prince are particularly instructive on how such alterations should be viewed under the third fair use factor.

In *Cariou v. Prince*, the Second Circuit determined that all but five works created by Prince were fair uses as a matter of law, because extensive physical alterations served to render the originally works barely recognizable and thus they were visually transformed. *Cariou v. Prince*, 714 F.3d 694, 710-11 (2d Cir. 2013). The Court declined to make a fair use determination on the five other works, remanding them to the district court, as they did "not

sufficiently differ from the photographs of Cariou's that they incorporate for [the court] confidently to make a determination about their transformative nature as a matter of law." *Id*.

For the five remanded works, the Court noted that they began as "classical portraiture and landscape photos," but contained key differences when viewed in the context of defendant's work, including: lozenges painted over the subject's eyes and mouth, the addition of "cartoonish appendages" and enlarged hands, an electric guitar pasted onto the canvas, and cutting the subject out and taping it onto a blank canvas. *Id*. Nevertheless, despite the number of alterations which the Court admitted "unarguably change the tenor of the piece," the Court stated that "it is unclear whether these alterations amount to a sufficient transformation of the original work of art such that the new work is transformative." *Id*. Thus, it could not determine whether there was fair use as a matter of law.

In another case involving Richard Prince, the district court more recently held again that a complete reproduction of a plaintiff's photograph where the only changes made to the original were comments added by the defendant below the photograph, did not render the second work transformative as a matter of law, and therefore could not weigh the third factor in favor of the defendant. *Graham v. Prince*, 265 F. Supp. 3d 366, 382 (S.D.N.Y. 2017).

In each case, defendant's use of plaintiff's work involved more than "cropping," yet even still the courts declined to hold that the third factor weighed in favor of the defendant. In light of these cases, it cannot seriously be doubted that the minimal cropping employed by Hadid here is insufficient to render its use fair under the third factor.

Under the third factor, regardless of the quantity of the copyrighted work taken by the VH, "[w]hat matters is whether the alleged infringer used the 'heart' of the material; in other words, superficial editing or cropping does not impact the Court's consideration." *Fitzgerald v.*

*CBS Broadcasting, Inc.*, 491 F. Supp. 2d at 188 (citing Harper & Row, 471 U.S. at 565; Campbell, 510 U.S. at 587).

Here, Hadid's slight cropping of the Photograph does not assist its fair use argument. The heart of the Photograph remains intact in Hadid's unauthorized use. In fact, Hadid's cropping likely is the result not of any conscious choice by Hadid but by the automatic square cropping employed by Instagram.

For the foregoing reasons, the third fair use factor should weigh against a finding of fair use.

The fourth fair use factor asks whether the infringing use impacts the "potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). Hadid's use of the Photograph serves as a market substitute for the Photograph, and that alone tips the balance of this factor in favor of Plaintiff. As set forth in *Campbell*, the key inquiry under the fourth factor is whether the defendant's version of the photo can serve as a "market substitute" for the original. See *Campbell*, 510 U.S. at 587.

Here, it could not be clearer that that is the case. In its relatively unaltered form, the cropping employed by Hadid still displays what is the heart of the original work. Taken to its logical conclusion, Hadid's position would mean that potential licensees of the Photograph will no longer be incentivized to pay a licensing fee to use the Photograph. Instead, they could simply copy the version published by Hadid for free. Therefore, Hadid's use presents the possibility of entirely usurping Plaintiff's licensing market. See *TCA Television*, 839 F.3d 168, 186 (2d Cir. 2016) ("[T]he district court disregarded the possibility of defendants' use adversely affecting the licensing market for the Routine." (citations omitted)); *House of Bryant Publs, LLC*, No. 3:09-0502, 2009 U.S. Dist. LEXIS 101878, at *25-27 ("[T]he court must accept as true the plaintiff's

allegations that it regularly licenses 'Rocky Top' and that allowing this type of infringement to go unpunished would harm the plaintiff's licensing market. Moreover, the plaintiff responds that the defendant was not attempting to enter new, fair use markets through this clip; rather the defendant used the clip of 'Rocky Top' in precisely the same manner HOB would seek to license it. . . . The plaintiff contends that 'if every potential licensee could use 'Rocky Top' any time the state of Tennessee, Knoxville or UT were mentioned,' on a theory that the potential licensee was somehow exploiting a new 'fair use' market, 'HOB's licensing ability would be completely eroded.'"); see also *Richard Anderson Photography v. Brown*, Civil Action No. 85-0373-R, 1990 U.S. Dist. LEXIS 19846, at *5 (W.D. Va. Apr. 16, 1990) ("Assuming that the plaintiff is the owner of the copyright, I find that the defendant's use of photographic images used without license was not fair because such use denied the plaintiff licensing fees which clearly affects the value of the copyrighted work.").

Here, the potential for an adverse impact on Brammer's licensing market is clear. Therefore, this factor should weigh against a finding of fair use.

B. Implied License

In Hadid's imaginary world of make-believe contracts, individuals who capture photographs that depict Hadid looking at the camera or acknowledging the photographer's existence are somehow different than all others, notably because they represent a "meeting of the minds" between her and the photographer. Hadid's convenient, novel legal approach runs counter to all prior established legal holdings on the subject matter and is the result of dramatic oversimplification of what may or may not have transpired between Hadid and the photographer.

Did Hadid know the photographer? How far away was the photographer from Hadid when the Photograph was captured? Did Hadid and the photographer exchange words? Did

Hadid ask about using the Photograph? We do not know because Hadid's assertion is without facts with the exception that she smiled at the camera.

If a model poses for a sculptor, does she possess an implied license to appropriate the work? If an individual provides a quote to reporter for a story, does she possess an implied license to appropriate the work? If an individual cooperates with an author on a biography, does she possess an implied license to appropriate the work. Of course not. If Hadid's approach to the issue of an implied license were adopted, the copyrights of the majority of the world's authors would be obliterated because the only requirement for an implied license would be for the subject of a work of original art would be to claim (not very convincingly) that she winked, smiled, nodded, or otherwise communicated her acceptance to the author.

Hadid's legal approach is alarming for its blatant attempt to rewrite established legal doctrine. The Court should reject Hadid's assertion that the author of the Photograph granted Hadid an implied license to exploit the work.

### III. THE COMPLAINT PROPERLY ALLEGES THE ELEMENTS OF CONTRIBUTORY INFRINGEMENT

Hadid commands forty-seven million (47,000,000) Instagram followers. It is fact that her followers copy and disseminate the information, both visual and text, Hadid posts to her Instagram page. In fact, the ability to copy and share Hadid's posts is built in to Instagram. Each Instagram post provides the viewer to share in a variety of ways, to Facebook, messenger, Twitter, or Email. By the time Hadid removed the infringing post containing the Photograph, 1,607,211 followers had "liked" the post. It is safe to assume that a percentage of the followers that "liked" the infringing post also took the time to "share" the post.

CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

Dated: May 22, 2019    Respectfully submitted,

__/s/__David C. Deal_____
David C. Deal (VA Bar No.: 86005) (pro hac to be admitted)
**The Law Office of David C. Deal, P.L.C.**
P.O. Box 1042
Crozet, VA 22932
Telephone: (434) 233-2727
*david@daviddeal.com*

*Counsel for Plaintiff*


Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
*mreese@reesellp.com*

*Local Counsel*